25CA1122 Marriage of Sharp 05-14-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1122
Weld County District Court No. 21DR30001
Honorable Kimberly B. Schutt, Judge

In re the Marriage of

Megan Rose Sharp,

Appellee,

and

Jeremiah Walker Sharp,

Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE FOX
J. Jones and Dunn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2025

Massey, Kelly & Priebe, PLLC, Samantha J. Walsh, Fort Collins, Colorado, for Appellee

Hampton & Pigott LLP, David J. Pigott, Natalie T. Chase, Broomfield, Colorado, for Appellant

¶ 1　　The district court dissolved the marriage of Jeremiah Walker Sharp (husband) and Megan Rose Sharp (wife) and entered permanent orders awarding spousal maintenance to wife. Husband later filed a motion to modify maintenance, which the district court denied. Husband now appeals the court's order. For the following reasons, we affirm.

## I.　　Background

¶ 2　　The parties were married in September 2006 and wife filed for dissolution in January 2021. After the parties stipulated to parenting and financial matters, the district court dissolved the marriage in August 2022. When the court entered permanent orders, wife earned $3,417 per month working part time at Compass Ag Solutions, LLC, and husband earned $10,650 per month as a sergeant with the Colorado State Patrol (CSP). Based in part on this disparity, the court awarded wife maintenance of $1,700 per month for six years and six months.

¶ 3　　In August 2024, husband moved to modify maintenance, asserting that he had resigned from his "previous position to improve legitimate health concerns," is "now a full-time student with a drastically reduced income," and that maintenance should

1

therefore be reduced to $0.  The motion failed to include information about husband's full-time employment at Federal Signal (Federal), which he had assumed seven months before requesting the modification.

¶ 4     At the hearing on husband's motion, husband disclosed his job at Federal.  In a written order, the district court found that husband's income had increased; therefore, despite the job change and his status as a full-time student, he had failed to establish that there was a "substantial and continuing change in circumstances" warranting modification.  Accordingly, the court denied his motion.

¶ 5     On appeal, husband argues that (1) the court erroneously dismissed as "speculative" his testimony that his full-time enrollment in a graduate program would reduce his future earning capacity at Federal; (2) the court's reasoning discourages obligors from pursuing an education while remaining employed; (3) the court minimized wife's "substantially" increased income to determine whether maintenance remained fair; (4) the court erred by relying on wife's "inflated" expenses; and (5) the court erred by awarding attorney fees to wife.  Wife also asks for appellate attorney

fees.  We affirm the district court's order but deny wife's request for appellate fees.

## II. Husband's Future Earning Capacity

### A. Additional Background

¶ 6    Husband resigned from CSP at the recommendation of his therapist.  He then enrolled in Franklin University's online master's program for mental health counseling and opted to take a twenty-four credit-hour course load during the spring semester.  This decision underpinned the motion to modify maintenance, in which husband characterized himself as "a full-time student with drastically reduced income."

¶ 7    Around the time he enrolled, however, husband began working a full-time sales job at Federal where his base salary was $80,000 per year plus commissions.  He earned $169,138 in 2024 but said that this was not a representative salary because he received a "windfall" from his predecessor's sales.  Husband testified that his rigorous course load would limit his ability to earn future commissions and estimated that he would make closer to $100,000 annually after graduating from his mental health program.  Based on this, husband asked the court to recalculate maintenance using

a monthly income of $8,551.40 — which excluded commissions and some benefits.

¶ 8    Evidence introduced at the hearing showed that wife's income had also increased. Because of this, the court found that "the fairest approach is to treat both parties the same and analyze maintenance [based] on their actual incomes for 2024 . . . rather than speculating about the 'what ifs' that they each suggest." The court then found that husband's gross monthly income was $17,103.06 and wife's gross monthly income was $8,427. Based on the respective incomes, the court determined that husband had not met his burden "to prove a substantial and continuing change in circumstances" even though he acted in good faith in changing employment. The court therefore found that the maintenance award remained fair and denied the motion to modify maintenance.

¶ 9    Husband argues that the court erred by refusing to consider the "foreseeable effect" of his full-time course load on his future earning capacity. He posits that section 14-10-122(1)(a), C.R.S. 2025, requires a forward-looking inquiry because the statute applies to payments accruing after a motion to modify maintenance is filed. We are not persuaded.

### B. Standard of Review

¶ 10    "We review an order denying a modification of maintenance for an abuse of discretion." *In re Marriage of Young*, 2021 COA 96, ¶ 7. "A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if the court misapplies the law." *Id.* To the extent husband's contention raises a question of statutory interpretation, we review this de novo. *In re Marriage of Schmedeman*, 190 P.3d 788, 790 (Colo. App. 2008).

### C. Applicable Law and Analysis

¶ 11    When a court grants an initial maintenance award, it bases its decision on findings concerning the parties' gross income, financial resources, and the marital property apportioned to each party. § 14-10-114(3)(a)(I), C.R.S. 2025. But the inquiry is different on a motion to modify maintenance. Under section 14-10-122(1)(a), the threshold question is whether the moving party has demonstrated "changed circumstances so substantial and continuing as to make the terms unfair." The party seeking modification "bears a heavy burden of proving that the provisions have become unfair under all relevant circumstances." *Young*, ¶ 12.

¶ 12 We first reject husband's argument that the statute requires the court to look at future circumstances when deciding whether to modify maintenance. On the contrary, the statute places on the moving party the burden of demonstrating that there are "*changed circumstances*" warranting the modification. § 14-10-122(1)(a) (emphasis added). The legislature's use of "changed" (past tense) manifests its intent for the court to focus on conditions already present at the time of the hearing. *See In re Marriage of Folwell*, 910 P.2d 91, 93 (Colo. App. 1995) ("[M]odification of maintenance must be based upon the parties' needs and circumstances at the time of the hearing rather than speculation about future conditions."); *see also Allman v. People*, 2019 CO 78, ¶ 13 (we apply the plain and ordinary meanings of statutory terms, giving effect to the legislature's intent).

¶ 13 The record before us shows that the court properly based its decision on the parties' financial circumstances at the time of the modification hearing. Though husband testified that his capacity to earn commissions may decrease as a full-time student, the court was not required to consider what may or may not happen in the future. *See Folwell*, 910 P.2d at 93; *see also In re Marriage of*

*Simon*, 856 P.2d 47, 51 (Colo. App. 1993) ("[M]aintenance must be based upon the parties' needs and circumstances at the time of the hearing, rather than upon their past or future conditions."). Husband carried a heavy burden of showing that the maintenance award became improper based on "substantial and continuing" changed circumstances, and such circumstances were not present at the time of the hearing. § 14-10-122(1)(a); *see Young*, ¶ 12. Indeed, it is undisputed that husband's income had actually increased between the original maintenance award and the modification hearing. Thus, the court did not abuse its discretion by declining to speculate about husband's future earnings. *Id.* at ¶ 7.

## III.    Good Faith Career Choice

¶ 14    Husband next argues that the district court's decision discourages obligors from seeking an education, which runs afoul of the public policy embodied in section 14-10-114(8)(c)(V). This provision protects a spouse from being deemed "underemployed" if he is "enrolled in an educational program that is reasonably intended to result in a degree or certification . . . and that will result

in a higher income, so long as the educational program is a good faith career choice." § 14-10-114(8)(c)(V)(C).

¶ 15    Neither party raised underemployment as an issue at the modification hearing.  And the court neither found husband underemployed, nor made any findings under section 114(8)(C)(V)(C).  Thus, the issue is unpreserved and we decline to address it.  *See* C.A.R. 28(a)(7)(A); *see also In re Marriage of Mack,* 2022 CO 17, ¶ 12 (appellate courts generally do not review issues not raised in or decided by a lower court).

## IV.    Wife's Increased Income

### A.    Additional Background

¶ 16    At the time the district court entered permanent orders, wife earned $3,417 per month.  As of the 2025 modification hearing, her salary had increased to $6,667, with monthly bonuses averaging $1,256.  The court determined that her monthly income was $8,427 and considered her income when denying husband's motion. Specifically, the court stated,

> Wife's income has also substantially increased since the time of the original maintenance award, particularly if the [c]ourt takes into consideration her bonus income from 2024. However, . . . the fact that one or both spouses

have experienced a change in income does not in and of itself warrant a modification.

. . . .

The [c]ourt finds that the fairest approach is to treat both parties the same and analyze maintenance based on their actual incomes for 2024, inclusive of bonus/commission income, rather than speculating about the "what ifs" that they each suggest to the court.

. . . .

When the [c]ourt made the original maintenance award, it was based on the fact that [w]ife had primarily cared for the parties' children during the marriage and had lesser income than [h]usband; both of those things remain true today.

¶ 17  Husband argues on appeal that the court minimized the significance of wife's increased income and, in doing so, "ignored the statutory requirement of fairness." We disagree.

### B.  Standard of Review

¶ 18  We review the district court's decision for an abuse of discretion, applying the legal principles set forth *supra* Part II.B.

### C.  Applicable Law and Analysis

¶ 19  As noted, the threshold inquiry when modifying spousal maintenance is whether the moving party has demonstrated "changed circumstances so substantial and continuing as to make

the terms unfair." § 14-10-122(1)(a).  While relevant, the fact that one spouse's income may have increased since the court entered permanent orders does not alone indicate that the initial maintenance award has become unfair.  *Young*, ¶ 37.  Rather, in determining "unfairness," the court must examine the relevant circumstances pertinent to the initial maintenance award and the totality of the parties' present financial situation.  *Id.*; *In re Marriage of Nelson*, 2012 COA 205, ¶ 37.

¶ 20    The district court followed this approach.  It considered wife's increased income, compared it to husband's similarly increased income, and noted the well-settled legal principle that an increase is not dispositive.  Further, it cited its reason for awarding maintenance in the first instance: because wife made less money than husband and wife served as the children's primary caretaker.  These circumstances remained true at the time of the hearing, and thus the court committed no abuse of discretion when considering wife's increased income.  *See Young*, ¶ 37; *Nelson*, ¶ 37.

## V. Wife's Reasonable Needs

### A. Additional Background

¶ 21 Despite her higher income, wife continued to experience a $3,380 monthly deficit. Wife's sworn financial statement listed $11,590 in monthly expenses, which included housing and food, utilities, vehicles, credit card debt, and costs associated with supporting the parties' two children. Wife testified about these expenses, explained that she's a "frugal person" who tries "to find the cheapest way to do things," and estimated that her expenses could be even higher because children's needs can be unpredictable. Husband's attorney cross-examined wife about the necessity of a couple of expenses at the hearing, but the reasonableness of the expenses listed in wife's financial statement remained largely uncontested. The district court made no direct findings as to reasonableness but concluded that wife was operating at a deficit and that "it would present a sudden and great financial hardship to terminate the additional financial support provided by the maintenance award."

¶ 22 Husband now argues that wife's expenses are "unusually high." He takes issue with miscellaneous categories such as hair

and nails and advocates for a recalculation of expenses using "reasonable benchmarks."  He also contends that wife impermissibly double counted a $656 credit card payment by itemizing the expenses underlying that debt.  Wife counters that the $656 credit card payment is marital debt and maintains that her expenses are reasonable.  We conclude that the record supports the court's findings.

## B.    Standard of Review

¶ 23    We review the district court's decision for an abuse of discretion, applying the legal principles set forth *supra* Part II.B. We are bound by the district court's factual findings unless they are clearly erroneous.  *In re Marriage of Rose*, 134 P.3d 559, 561 (Colo. App. 2006).

## C.    Applicable Law and Analysis

¶ 24    When initially awarding maintenance, the court must make explicit findings on the parties' reasonable financial needs.  § 14-10-114(3)(a)(I)(D).  But, again, this is not required on a motion to modify maintenance, where instead the moving party must prove a substantial and continuing change in circumstances.  § 14-10-122(1)(a); *Young*, ¶¶ 12, 18.  While the court may indeed examine

12

the reasonableness of the receiving party's monthly expenses, the court analyzes the totality of the circumstances when determining whether a maintenance award has become unfair. *See Young*, ¶ 37; *Nelson*, ¶ 37.

¶ 25    Here, wife testified about her housing, insurance, utility, and vehicle costs and answered questions about discretionary child care expenses such as hockey dues and prom outfits. Absent any evidence that these expenses are unreasonable, we cannot say that the district court's findings are clearly erroneous. *See Rose*, 134 P.3d at 561-62. The district court found wife's testimony to be credible, and her testimony supports the court's determination that maintenance remained necessary. *See In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) (we defer to the lower court's findings on credibility). We therefore conclude that the district court did not abuse its discretion by partially relying on wife's monthly deficit when denying husband's motion. *See Rose*, 134 P.3d at 561-62.

¶ 26    To the extent husband challenges — for the first time on appeal — the reasonableness of wife's hair, nail, clothing, and travel costs, that is a matter for the district court, not us. *See In re*

*Marriage of Page*, 70 P.3d 579, 584 (Colo. App. 2003). Regarding the $656 credit card payment, husband did not contest this expense nor bring the alleged purchases underlying the debt to the attention of the district court. Accordingly, the issue is unpreserved and we decline to review it. *See Mack*, ¶ 12.

## VI. Wife's Attorney Fee Award

### A. Additional Background

¶ 27 Wife asserted that husband's motion to modify was "groundless, frivolous, and vexatious" and requested attorney fees under section 13-17-102(2), C.R.S. 2025. Wife argued that husband filed the motion to "scare [her]" into resolving litigation regarding parenting time and asserted that he could not, "in good faith, indicate that his income had drastically reduced." The court agreed with wife and found that the motion was "groundless" because it failed to mention that husband began working at Federal after resigning from CSP. Thus, the motion was not "well-grounded in fact and lacked substantial justification," despite husband's credible reasons for leaving his previous job.

¶ 28 Husband argues that the court's two findings — that husband acted in good faith by leaving CSP and that the motion was

14

groundless — are irreconcilable, and therefore the court erred by awarding fees to wife. We disagree and uphold the award.

### B. Standard of Review

¶ 29 We review the court's decision to award attorney fees for an abuse of discretion. *In re Marriage of Davis*, 252 P.3d 530, 538 (Colo. App. 2011).

### C. Applicable Law and Analysis

¶ 30 A court may order a party to pay the other party's attorney fees if that party brought or defended an action that lacked substantial justification. § 13-17-102(2). A claim lacks "substantial justification" if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-101.5(1), C.R.S. 2025. The "groundlessness" inquiry turns on "whether the party presented 'any credible evidence' on [his] behalf." *In re Estate of Shimizu*, 2016 COA 163, ¶ 20 (citation omitted).

¶ 31 Husband's motion failed to disclose that he had accepted new employment after resigning from CSP and instead characterized him as a full-time student with a "drastic reduction in income." While we agree that the record supports the district court's finding that husband left CSP for a valid reason and that he is indeed a

15

full-time student, husband presented no credible evidence that he had suffered an income reduction. In fact, the evidence proved that he was earning more at the time of the hearing than he did when the court initially ordered maintenance. Husband testified that his income might decrease in the future, but as we have concluded, the court was not required to consider this speculation. We therefore perceive no abuse of discretion in the court's decision to award fees to wife. *See Calvert v. Mayberry*, 2019 CO 23, ¶ 43 (upholding the district court's attorney fee award when the underlying claim was groundless).

## VII. Wife's Request for Appellate Attorney Fees

¶ 32    Finally, wife requests appellate attorney fees, again under section 13-17-102(2). Wife cites *Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 75, for the proposition that a party who recovers fees at a prior stage in the proceeding may be able to recover fees for successfully defending the appeal. However, we cannot award appellate attorney fees under section 13-17-102(2) merely because fees were awarded under that statute below — instead, the appeal itself must be frivolous. *See, e.g., Shimizu*, ¶ 34; *Front Range Home Enhancements, Inc. v. Stowell*, 172 P.3d 973, 976-77 (Colo. App.

16

2007).  We conclude that husband's appeal is not frivolous and therefore decline to award attorney fees to wife.

## VIII.  Disposition

¶ 33    The order is affirmed.

JUDGE J. JONES and JUDGE DUNN concur.